IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AARON ANTHONY FLEMONS                                             PLAINTIFF
ADC #119749

v.                        No: 4:22-cv-00606 LPR-PSH

VALERIE WESTBROOK                                                 DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Aaron Anthony Flemons filed a *pro se* complaint on June 30, 2022, while incarcerated at the Arkansas Division of Correction's East Arkansas Regional Unit (Doc. No. 2). At the Court's direction, Flemons filed a supplement to his complaint. *See* Doc. Nos. 3 & 7. After screening, Flemons was allowed to proceed

with a First Amendment retaliation claim against Classification Officer Valerie Westbrook and Captain Nunn and an Eighth Amendment deliberate indifference claim against Westbrook. *See* Doc. Nos. 8 & 19. Flemons voluntarily dismissed his claim against Nunn. *See* Doc. Nos. 11-12. His retaliation claim against Westbrook was subsequently dismissed without prejudice for failure to exhaust available administrative remedies. Doc. No. 45. Flemons' deliberate indifference claim against Westbrook remains. *Id.*

Before the Court is a motion for summary judgment, brief-in-support, and statement of undisputed material facts filed by Westbrook (Doc. Nos. 88-90); and Flemons' response, brief-in-support, statement of disputed material facts, and declarations in opposition to Westbrook's motion (Doc. Nos. 98-102). Also before the Court are two motions for injunctive relief filed by Flemons (Doc. Nos. 86-87) seeking to enjoin Westbrook as well as certain medical providers who are not defendants in this case. For the reasons described herein, the undersigned recommends that Westbrook's motion for summary judgment be granted and Flemons' motions for injunctive relief be denied.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV.

P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude

summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts[1]

#### *Lawsuit Allegations & Flemons' Incarcerations*

Flemons claims that classification officer Westbrook violated his Eighth Amendment rights when she assigned him to work on a hoe squad on December 30, 2021, despite knowing he was blind in one eye and unable to physically perform that job. Doc. No. 2, *Complaint,* at 1. Flemons is an inmate at the East Arkansas Regional Unit (EARU) of the Arkansas Division of Correction (ADC). *Id.* at 1. He has been incarcerated in the ADC several times, beginning in 2001 at the age of 19. Doc. No. 88-1, *Inmate Record Summary*, at 1-4. It appears that he was incarcerated until December 6, 2006, and then re-incarcerated in 2009 for about a year. *Id.* at 2, 4-5 (showing discharge and new commitment dates). His current incarceration began in February 2012. *Id.*

#### *Flemons' Medical Diagnosis & Health Restrictions*

Flemons claims that he has been blind in his *right* eye since birth. Doc. No. 2 at 2. He asserts he received social security benefits because of his blindness and

---

[1] Unless otherwise noted, these material facts are taken from the parties' statements of facts (Doc. Nos. 90 & 100) and the exhibits provided by the parties. Disputed facts are noted. Opinions, legal conclusions, and immaterial facts are omitted.

also because of mental/emotional problems.[2]  *Id.*

In her review of prison records concerning Flemons, Shelley Byers, the ADC's Assistant Medical Services Administrator, identified one health and classification restriction related to vision issues. Doc. No. 88-4, *Declaration of Shelly Byers* ("*Byers Declaration*"), at ¶ 8.  On June 4, 2009, during the initial intake in an incarceration prior to the current one, Nurse Practitioner Estella Murray noted that Flemons *reported* he was blind in his right eye on his initial report of physical examination.  *Id.* at ¶ 8; Doc. No. 88-8, *June 4, 2009, Physical Examination*; Doc. No. 88-9, *June 4, 2009, Health Services Encounter*.  She entered a restriction for "jobs needing visual acc."  *Id.*  There is no documentation of an eye examination confirming the reported vision loss at that time.

The "jobs needing visual acc." restriction was removed on November 4, 2018,

---

[2] Flemons attached a copy of the Social Security Administration's (SSA) decision to his complaint.  Doc. No. 2 at 12-17.  That decision makes no findings about Flemons' vision and specifically does not find he is disabled because of any vision issues.  *Id.*  Rather, it states that *Flemons stated* he was blind in his *left* eye.  *Id.* at 16.  The SSA determined that Flemons became disabled *for purposes of his application for supplemental security income* on September 1, 2009, based on a personality disorder diagnosis.  *Id.* at 16-17.  The findings specifically state that Flemons "has inflexible and maladaptive personality traits which cause significant impairment in social or occupational functioning or subjective distress, as evidenced by pathologically inappropriate suspiciousness or hostility, pathological dependence, passivity, or aggressivity, and intense and unstable interpersonal relationship and impulsive and damaging behavior."  Doc. No. 2 at 16.  The findings further state that Flemons' "impairment has caused marked restriction in activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, and three episodes of decompensation, each of extended duration."  *Id.*

by Advanced Practice Nurse Patrick Drummond who noted that Flemons' eyes were normal on his initial report of physical examination.[3] *Byers Declaration* at ¶ 8; Doc. No. 88-10, *November 4, 2018, Physical Examination*; Doc. No. 88-11, *November 4, 2018, Health Services Encounter*; Doc. No. 88-6, *Other Actions/Procedurals/Referrals,* at 3 (showing the "jobs needing visual acc." restriction entered on June 4, 2009, was terminated on November 4, 2018).

Flemons submitted a copy of a medical record dated October 21, 2022, that includes some of his medical history. Doc. No. 101, *Declaration of Aaron Flemons ("Flemons Declaration")*, at 4-5. This record states that Flemons was seen onsite by optometry in 2019 and documents the following findings:[4]

> STRABISMUS OD X BIRTH-MONITER; AMBLYOPIA OS-STABLE-MONITOR[5]
> BLURRINESS IN OS COMING FROM CONVERGANCERIAD-ACCOMODATION, MIOSIS, AND CONVERGANCE PT ED

---

[3] It is not clear what triggered the examination in 2018. Doc. No. 88-10, *November 4, 2018, Physical Examination*; Doc. No. 88-11, *November 4, 2018, Health Services Encounter*. At this point, Flemons had been incarcerated continually since 2012. Doc. No. 88-1, *Inmate Record Summary*, at 5-7.

[4] The record before the Court does not contain a copy of the report of that examination. The medical record submitted by Flemons refers to the findings of the optometrist.

[5] The Court takes judicial notice of the dictionary definitions of strabismus OD and amblyopia OS. Fed. R. Evid. P. 201. "OD" refers to the right eye; "OS" refers to the left eye; "strabismus" means the eye turns inward towards the nose (commonly referred to as a "cross-eye"); "amblyopia" means the eye has reduced vision due to unequal vision signals from each eye (also called a "lazy eye"). *See* https://www.merriam-webster.com/dictionary.

*Id.*

Flemons speculates that Westbrook or another staff member may have removed the restriction put in place in 2009 *after* he was assigned to hoe squad in 2021.[6] *Flemons Declaration* at ¶ 9. He claims his work history proves he had an applicable restriction because he was not previously assigned to the hoe squad. *Id.* at 1-2, 6-11. Flemons also states that although he has never worked the hoe squad, he has seen the hoe squad work. *Id.* at 2. He says the workers are given a hoe and required to walk through ditches, fields, etc. chopping grass up and down.[7] *Id.* Flemons states that he received six major disciplinaries because he refused his assignment to hoe squad with a loss of certain privileges, reduction in class, and the loss of 125 days good time. *Id.* at 3.

---

[6] Flemons complains that Westbrook refused to provide during discovery his classification restrictions prior to the date he was assigned to the hoe squad and that he needs more time to complete discovery. Doc. No. 99, *Flemons' Brief-in-Support,* at fn. 1. Flemons was afforded ample time to litigate his discovery requests, and the Court previously determined that Westbrook made a good faith effort to respond to his discovery requests and provided the documents she could obtain. *See* Doc. No. 85. Additionally, Westbrook submitted a copy of a report called *Other Actions/Procedures/ Referrals* that lists waivers and restrictions among other medical actions. *See* Doc. No. 88-6. This report does not list any additional restrictions after the June 4, 2009 restriction was terminated on November 4, 2018.

[7] In his complaint, Flemons describes the danger presented by his assignment to the hoe squad, stating "On hoe squad inmates are required to work through fields, in and out of ditches, line up closely side by side and are given a hoe and told to chop grass. I could chop off someone elses foot or worse cut myself because I can't see to do the work." Doc. No. 2-1 at 2.

### *The ADC's Classification Committee & Work Assignments*

Administrative Directive 13-55 ("AD 13-55") is the ADC's policy governing assignment to hoe squads, garden squads, and field utility squads. Doc. No. 88-12, *AD 13-55*. AD 13-55(II)(B) provides the medical classification guidelines for assigning an inmate to hoe squad. Doc. No. 88-12 at 2. Inmates that are medical classification M-1 or M-2 may be assigned to hoe squad unless they have health and classification restrictions that restrict assignments that require: 1) prolonged crawling, stooping, running, jumping, walking, or standing, 2) strenuous physical activity for periods in excess of eight hours, 3) handling or lifting of heavy materials in excess of fifty pounds, or 4) exposure to high environmental temperature for a period in excess of eight hours. *Id.* at 2, 5-6. Other assignment limitations may be determined on an individual basis by the unit classification officer. *Id.* at 5-6.

The policy does not require the classification committee to hold a hearing or meet with the inmate before assigning an inmate to work on the hoe, garden, or field utility squads. Doc. No. 88-12. It does provide that an inmate may be "reassigned at the recommendation of the field supervisor and/or the Unit Classification Officer on a temporary basis until seen by the Unit Classification Committee," if the inmate is unable to perform the job despite his best efforts or if the inmate has an enemy alert that needs to be evaluated. *Id.* at 3.

The classification committee at each unit assigns inmates at that unit to

housing assignments and jobs. Doc. No. 88-3, *Declaration of Valerie Westbrook* "*Westbrook Declaration*"), at ¶ 3; *Byers Declaration* at ¶ 3. The classification committee consists of several members, including a representative from Wellpath, the prison's medical provider. *Westbrook Declaration* at ¶ 5. When making assignments, the classification committee considers inmates' health and classification restrictions. The committee does not assign inmates to a housing assignment or job if they have a prescription indicating that an assignment would be inappropriate. *Westbrook Declaration* at ¶ 4; *Byers Declaration* at ¶ 4.

The Wellpath representative is not a voting member of the committee. However, he or she sits on the classification committee to ensure that inmates are not inappropriately assigned. *Id.* When an inmate has a medical condition or is undergoing a treatment that would make a particular assignment inappropriate, the Wellpath representative recommends that the inmate be given a different assignment. *Id.* When the Wellpath representative recommends that an assignment would be medically inappropriate, the classification committee does not place the inmate in that assignment even if they do not have a relevant health and classification restriction. *Id.*

Wellpath nurses and providers can issue health and classification restrictions. *Byers Declaration* at ¶ 6. Nurses can write temporary prescriptions for inmates which remain in place until they are able to see their doctor. The doctor can then

write a permanent prescription if found necessary. *Id.* at ¶ 6. Health and classification restrictions can be added at any time. *Id.* To add a classification restriction, a Wellpath nurse or provider must fill out an electronic form which will instantly add it to the inmate's list of health and classification restrictions. *Id.* at ¶ 7.

### ***Flemons' Assignment to the Hoe Squad***

On November 4, 2018, Flemons' medical restriction to "jobs needing visual acc." was removed by a Wellpath care provider.[8] Flemons was assigned to the hoe squad on December 30, 2021. Doc. No. 88-1, *Inmate Record Summary*, at 34; Doc. No. 88-2, *Classification Committee Action,* at 1-6. The assignment was requested by Westbrook on November 2, 2021, and approved by committee members Westbrook, Deputy Warden Michael H. Richardson, Major Tyrone D. Allison, School Principal Angela D. Beard, and Nurse Assistant Tryphena Jackson.[9] Doc. No. 88-2 at 1-5. *See also* Doc. No. 88-3, *Declaration of Valerie Westbrook* "*Westbrook Declaration*"), ¶ 1.

At the time Flemons was assigned to the hoe squad, his medical classification

---

[8] Flemons had a health and classification restriction for "jobs needing visual acc." from June 4, 2009, through November 4, 2018. *Byers Declaration* at ¶ 8; Doc. No. 88-6 at 3. Flemons has not had any health and classification restrictions about his vision since November 4, 2018. *Byers Declaration* at ¶ 9; Doc. No. 88-6; Doc. No. 88-7, *Health and Classification Restrictions*.

[9] It is not clear whether the committee members met in person or in some other manner.

was M2.  *See* Doc. No. 88-7, *November 4, 2018 Health Services Encounter*, at 4, 6 (showing M2 classification on November 4, 2018, and on June 16, 2022). Additionally, Flemons had no health or classification restrictions in place that would have prevented him from being assigned to hoe squad.  *Westbrook Declaration* at ¶ 7; *Byers Declaration* at ¶ 8-9.  *See also* Doc. No. 88-5, *Grievance EA-24-00242 Worksheet* (in response to a grievance field by Flemons, Westbrook stated she does not make entries in the health classification restrictions, but only uses them to assign jobs); Doc. No. 88-6, *Other Actions/Procedures/Referrals* (showing no medical restrictions listed since 2018 for Flemons). And finally, at the time Flemons was assigned to the hoe squad, the classification committee representative from Wellpath did not notify the committee of any reason why he could not be assigned to that job. *Westbrook Declaration* at ¶ 6.

It is undisputed that Westbrook has no medical training beyond CPR and first aid and does not have access to any inmate medical records beyond what is listed in their health and classification restrictions and any related attachments. *Westbrook Declaration* at ¶¶ 8-9.

### IV. Analysis

Flemons' remaining Eighth Amendment deliberate indifference claim is based on his allegation that Westbrook assigned him to work the hoe squad despite her knowledge that he is blind in one eye, has mental and emotional problems, and

is unable to physically perform that job.[10]  Doc. No. 2 at 2.  He sues Westbrook in both her individual and official capacities.  *Id.* at 5.

## A.  *Individual Capacity Claims*

Westbrook asserts that she is entitled to qualified immunity with respect to Flemons' individual capacity claims.  Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law and is appropriately resolved on summary judgment.  *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct.  *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).  Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of

---

[10] Flemons also alleges that Westbrook placed him on the hoe squad without a classification hearing.  Doc. 2 at 2.  His due process claims based on the lack of a hearing have been dismissed in this case.  *See* Doc. No. 19.

the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In this case, the Court finds that Flemons fails to establish a constitutional violation, as explained below.

The Eighth Court of Appeals has set forth the standard for Eighth Amendment violations relating to work assignments as follows:

> The Eighth Amendment's prohibition against "cruel and unusual punishment" applies to conditions of confinement, see *Rhodes v. Chapman,* 452 U.S. 337, 345–47, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), and prison work assignments fall under the ambit of conditions of confinement, *Choate v. Lockhart,* 7 F.3d 1370, 1373 (8th Cir. 1993). The Eighth Amendment "forbids knowingly compelling an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful," *Sanchez v. Taggart,* 144 F.3d 1154, 1156 (8th Cir. 1998), and requires supervisors to supervise and train subordinates to prevent the deprivation of a constitutional right, see *Tlamka v. Serrell,* 244 F.3d 628, 635 (8th Cir. 2001).
>
> To prevail on his Eighth Amendment claim, Ambrose "must prove both an objective element, which asks whether the [risk of harm] was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind." *Choate,* 7 F.3d at 1373.

*Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir. 2007).

There are no disputed issues of *material* fact in this case. Flemons has come forward with no evidence showing that he faced a sufficiently serious risk of harm by being assigned to the hoe squad, or that Westbrook was deliberately indifferent to any such risk.

First, Flemons has not established that he is medically unable to work the hoe squad. While there is evidence showing that Flemons suffers vision issues (a lazy eye and a crossed eye), as well as evidence that he previously had a medical restriction based on his own report of being blind in one eye, there is no evidence in this record that his vision problems actually render it unsafe for him to work on the hoe squad. And there is no genuine dispute that a medical care provider in 2018 removed the restriction Flemons previously held and determined that Flemons' issues would not render work on the hoe squad unsafe.[11]

Second, Westbrook was in no position to determine whether Flemons' vision issues precluded him from working the hoe squad. The record shows that Flemons had no health or classification restrictions in place that would have prevented his assignment to the hoe squad in 2021; that Westbrook has no significant medical training or access to inmate medical records; and that the medical member of the classification committee did not inform the committee of any medical concerns with

---

[11] Flemons attempts to argue that he actually had a medical restriction related to his vision in place at the time of his assignment to the hoe squad, and that restriction would have prevented that assignment. His claim is speculative at best and is not supported by the record. *See Flemons' Declaration* at 2; Doc. No. 99, *Flemons' Brief-in-Support,* at n. 2. Flemons' unsupported statements are insufficient to defeat a properly supported motion for summary judgment. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

his being assigned to the hoe squad.  Additionally, the record indicates that the entire committee voted to place Flemons on the hoe squad, not just Westbrook.

Flemons maintains he sent Westbrook requests for interviews, stopped her in the hallway and told her of his vision problems, and asked her to review his social security paperwork.  Doc. No. 99, *Flemons' Brief-in-Support,* at 4.  But for the reasons explained above, Westbrook must rely on the restrictions in place and input from the Wellpath committee member when making assignments.[12]  *Westbrook Declaration* at ¶¶ 4, 9.  And that Wellpath representative raised no concerns according to the documentation of the committee meeting.  *See* Doc. No. 88-2 at 1-6.

Finally, despite Flemons' arguments to the contrary, Westbrook's failure to hold a hearing before assigning him to the hoe squad does not evidence any deliberate indifference on her part.  The ADC's policy regarding work assignments does not require a hearing be held before such assignments are made.  Rather, it

---

[12] *See e.g., Moore v. Moore,* 111 F. App'x 436, 438 (8th Cir. 2004) (per curiam) (explaining that "in the absence of a medical lay-in or any other medical confirmation to support [the inmate's] assertions that he was too injured to work, there is no evidence to show that [prison] officials were aware that working [in a particular job] posed a risk to [the inmate's] health or safety") (unpublished).  *See also Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) ("Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis…"); *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) ("[B]ecause [prison officials] lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision…").

states that the committee will meet with the inmate under certain circumstances, such as when the inmate is not performing well enough despite his or her best efforts or when there are security concerns. *See* Doc. No. 88-12 at 3.

Flemons has failed to establish that his vision issues preclude him from assignment to the hoe squad. He also has failed to establish that Westbrook acted with deliberate indifference by assigning him to such work. Therefore, Westbrook is entitled to qualified immunity on Flemons' claims against her in her individual capacity.

### B.   *Official Capacity Claims*

Flemons' monetary claims against Westbrook in her official capacity are barred by sovereign immunity. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989).

The doctrine of sovereign immunity does not apply to Flemons' request for injunctive relief. *See Larson v. Kempker*, 414 F.3d 936, 939-40 (8th Cir. 2005); *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997). However, the only injunctive relief sought by Flemons in his complaint is the restoration of his class, lost good time, and lost privileges resulting from the disciplinaries he has received

for refusing to work the hoe squad.[13]  Doc. No. 2 at 3.  Because Flemons' due process claims relating to those disciplinaries have been dismissed, this request for injunctive relief is not related to his pending claims in this case and cannot be awarded.  *See* Doc. No. 19.

Flemons also filed two motions for injunctive relief against both Westbrook and multiple non-defendants (Doc. Nos. 86-87).  He requests that the Court order non-defendants "the Medical Department/Emma Hatchett/Jason Palmer Health Service Administrator/Assistant Health Services Admin.; Tracy Bennett/Gary Kerstein mid-level provider/Doctor and/or any other medical staff responsible" to give him the appropriate medical restrictions so that he will not be given an inappropriate work assignment.  Doc. No. 86 at 2.  Flemons also asks the Court to direct Westbrook to remove him from the hoe squad or any other inappropriate work assignment.  *Id.* at 3.  First, the Court cannot award injunctive relief against non-defendants in this case.  And second, as the Court has already found that Westbrook did not violate Flemons' rights by assigning him to the hoe squad, his request for an

---

[13] The Court cannot restore lost good time in a § 1983 suit in any case.  A prisoner may only pursue the restoration of those good time credits in a federal habeas action, after he has exhausted his available remedies in state court.  28 U.S.C. § 2254; *Edwards v. Balisok*, 520 U.S. 641, 643–44; *Heck v. Humphrey,* 512 U.S. 477 (1994); *Portley–El*, 288 F.3d, 1063, 1066–67 (8th Cir. 2002).

order directing Westbrook to do so should be denied. He must obtain the appropriate health classifications and restrictions through medical personnel.[14]

## V. Conclusion

For the reasons stated herein, the undersigned recommends that Westbrook's motion for summary judgment (Doc. No. 88) be granted and Flemons' claims be dismissed with prejudice. Flemons' motions for injunctive relief (Doc. Nos. 86-87) should be DENIED.

DATED this 16th day of January, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

[14] Flemons claims that he has filed multiple grievances against Westbrook and the medical department regarding his health classifications, but that those grievances "either disappear or are not investigated/answered and/or given evasive responses." Doc. No. 87 at 1. He also claims he has a pending lawsuit against Tracy Bennett, Gary Kerstein, and Hatchett that is related to this case. Doc. No. 86 at n. 1. A review of pending cases filed by Flemons in this district shows that he has a case pending against these defendants relating to treatment of an alleged scabies infection. *See Flemons v. Hatchett, et al.,* Case No. 2:23-cv-123-BSM-ERE.